**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSE MELENDEZ, YESSENIA CARRASQUILLO, ON THEIR OWN BEHALF AND ON BEHALF OF THEIR MINOR SON MARCOS MELENDEZ CARRASQUILLO<br><br>    Plaintiff,<br><br>    v.<br><br>ELIEZER RAMOS PARES IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF THE PUERTO RICO DEPARTMENT OF EDUCACION AND IN HIS PERSONAL CAPACITY; JORGE A. SANTIAGO, IN HIS OFFICIAL CAPACITY AS THE REGIONAL SUPERINTENDENT OF SAN JUAN, AND IN HIS PERSONAL CAPACITY, DENNISE VALDERRAMA CINTRON IN HER OFFICIAL CAPACITY AS SCHOOL PRINCIPAL FOR THE UNIVERSITY GARDENS HIGH SCHOOL AND IN HER PERSONAL CAPACITY, KEISHAMARI RODRIGUEZ RAMOS, IN HER OFFICIAL CAPACITY AS THE TEACHER IN CHARGE OF CLUBS IN UNIVERSITY GARDENS HIGH SCHOOL AND IN HER PERSONAL CAPACITY<br><br>    Defendants | Civil Action: _____ (   )<br><br><br>**ACTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF PURSUANT TO THE EQUAL ACCESS ACT; ACTION FOR DAMAGES FOR THE VIOLATION OF CIVIL RIGHTS UNDER 42 USC §1983**<br><br><br><br>TRIAL BY JURY DEMANDED |

**VERIFIED COMPLAINT**

**TO THE HONORABLE COURT:**

   **NOW APPEAR** the plaintiffs, José Meléndez, Yessenia Carrasquillo on their own behalf and on behalf of their minor son, Marcos Meléndez Carrasquillo, and respectfully state, allege and pray as follows:

**INTRODUCTION AND NATURE OF THE CASE**

   1.   The instant action seeks that this Honorable Court determine and declare that the actions and/or omissions taken by the Secretary of the Puerto Rico Department of Education, the

Regional Superintendent, the Principal of the University Garden High School and the Teacher in charge of the Clubs of the University Garden High School, when they (a) denied Marcos Meléndez Carrasquillo his right to equal access to establish a pro-life club in the University Garden High School under the Equal Access Act, (b) harassed and intimidated him, and permitted others to harass and intimidate him, (c) denied him his freedoms of religion, speech and association without due process and deny him equal protection of the law secured by both the United States and Puerto Rico Constitutions, and (d) denied him his rights under Puerto Rico, were unconstitutional and unlawful. The action seeks to enjoin Defendants from continuing their denial and impairment of Marcos Meléndez Carrasquillo's constitutional and statutory rights to establish the pro-life club; to stop their silencing his lawful speech; to stop their denial of his rights to lawful association; and stop their restriction of the expression of his religious beliefs, by and through the pro-life club, particularly when there are numerous other noncurricular clubs that enjoy the very same privileges that were and are denied to Marcos Meléndez Carrasquillo and his pro-life student club.

2.      Furthermore, this action seeks prospective relief against the Defendants in their official and compensatory and punitive damages against the several Defendants in their personal capacities, who under color of state law, have illegally and unconstitutionally deprived Marcos Meléndez Carrasquillo of his freedom of religion, freedom of speech and freedom of assembly secured to him by the First and Fourteenth Amendments of the Constitution of the United States of America without due process of law and without equal protection of the law, and an award of damages and attorneys' fees arising from such violations. The actions of the Defendants were wantonly illegal and in reckless and gross disregard of Plaintiffs' clearly established constitutional rights, as well as in direct and clear violation of the legal, statutory and regulatory

provisions applicable to the exercise of Plaintiffs' freedoms, for which they are not immune to suit, nor compensation of consequential and/or punitive damages.

3.     The instant action also seeks redress in the form of an award for damages and other prospective relief against the Defendants, both in his official and personal capacities who, in violation of the Puerto Rico Constitution and the Fundamental Right to Religious Freedom Act, developed and implemented a plan to intentionally deprive Marcos Meléndez Carrasquillo's rights protected by the Constitution of Puerto Rico and its laws, as more fully alleged herein.

## THE PARTIES

*A.     The Plaintiffs*

2.     Mr. José Meléndez is a citizen of the United States of America who resides and is domiciled in the city of San Juan, Puerto Rico (Mr. Meléndez).  He appears on his behalf and on behalf of his minor son Marcos Meléndez Carrasquillo.

3.     Mrs. Yessenia Carrasquillo is a citizen of the United States of America who resides and is domiciled in the city of San Juan, Puerto Rico (Mrs. Carrasquillo).  She appears on her behalf and on behalf of her minor son Marcos Meléndez Carrasquillo.

4.     Marcos Meléndez Carrasquillo is a citizen of the United States of America who resides and is domiciled in the city of San Juan, Puerto Rico.  He appears by and through his parents Mr. Meléndez and Mrs. Carrasquillo.

*B.     The Defendants*

5.     Eliezer Ramos Parés is a citizen of the United States of America who resides and is domiciled in the city of San Juan, Puerto Rico, and is the Secretary of the Puerto Rico Department of Education (Mr. Ramos).  As the Secretary of Education, Mr. Ramos is the nominating authority for the Department and supervises all teaching and non-teaching matters.

6. Jorge A. Santiago is a citizen of the United States of America who resides and is domiciled in the city of San Juan, Puerto Rico, and is the Regional Superintendent of San Juan of the Department of Education (Mr. Santiago). As the Regional Superintendent, Mr. Santiago is in charge of the supervision of teaching and non-teaching matters in the San Juan educational region, where the University Gardens High School is located.

7. Dennise Valderrama Cintrón is a citizen of the United States of America who resides and is domiciled in the city of San Juan, Puerto Rico, and is the School Principal of the University Gardens High School (Mrs. Valderrama). As the Principal of University Gardens, Mrs. Valderrama is in charge of supervising all teaching and non-teaching matters in the University Gardens High School.

8. Keishamarí Rodríguez Ramos is a citizen of the United States of America who resides and is domiciled in the city of San Juan, Puerto Rico, and is the Teacher in charge of School Clubs in the University Gardens High School (Mrs. Rodríguez). As the Teacher in charge of School Clubs, Mr. Rodríguez is in charge of the supervision of school clubs, the formation and approval of new clubs and the club activities.

## JURISDICTION AND VENUE

9. This Honorable Court has jurisdiction under 28 U.S.C. §1331 and, since plaintiff's civil rights under the Constitution of the United States have been adversely affected, under 20 U.S.C. § 4071 and 42 U.S.C. §1983.

10. The court has pendent jurisdiction over the claims for violations of the Constitution of Puerto Rico and Puerto Rico's Fundamental Right to Religious Freedom Act.

11. Venue is properly laid in this Honorable Court pursuant to 28 U.S.C. § 1391 inasmuch as plaintiffs' claims arose in this district.

## STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

12. Mr. Meléndez, Mrs. Carrasquillo, and Marcos Meléndez Carrasquillo are individuals with serious Christian convictions and beliefs. Such beliefs and convictions mark their daily lives and activities. They are actively involved in different ministries in their church congregation and hold beliefs and ideals consistent with their Christian faith. Among their religious beliefs and moral convictions is the belief that human life begins at the moment of conception, thus they believe that elective abortion is wrong and sinful, that human life ends when God decides, thus suicide and euthanasia are wrong and sinful, and that all human life has dignity, thus human life must be preserved.

13. Mr. Meléndez and Mrs. Carrasquillo enrolled Marcos Meléndez Carrasquillo at University Gardens High School, where he is currently in the final months of his senior year and is a candidate for graduation in May 2026.

14. As part of his religious beliefs and conservative point of view on social issues formed by his religious beliefs and moral convictions, Marcos Meléndez Carrasquillo has expressed his convictions in favor of the preservation and defense of human life, particularly regarding the life of unborn human beings. These beliefs are known to the teaching staff of the University Gardens High School and the students of the school. Due to these pro-life convictions, approximately in April 2025, Marcos Meléndez Carrasquillo sought to establish a chapter of "Students for Life of America" in the University Gardens High School. Director Valderrama requested information from Marcos Meléndez Carrasquillo about "*Students for Life of America*" to determine if she would serve as a mentor for a student club that she would lead as a "*Students for Life UGHS*".

15.    The club "*Students for Life UGHS*" would have the purpose of "stirring up in [University Gardens High School] a culture that upholds the dignity of all human life, educating, inspiring, and mobilizing students in defense of life, with love, respect, and dignity." The vision of the club was "to be a student chapter that transforms our environment into a space where all life is valued and supported by offering resources and accompaniment to those who need it and that shows that choosing life is always possible with love, respect and unity." "*Students for Life UGHS*" would be associated with "*Students for Life of America*" through an affiliation agreement dated September 9, 2025, which was signed by Marcos Meléndez Carrasquillo and Mrs. Valderrama.

16.    The "*Students for Life UGHS*" club met all the regulatory requirements for its establishment and existence within the public education system. It had a founding board composed of several students from the University Gardens High School; a Moderator/Mentor; several proposed activities, proposed places of visits, and a justification of existence and relevance.

17.    University Gardens High School currently has and in the past has had the following noncurricular student clubs and organizations: Robotics, National Honor Society, Astrophysics, Medicine, National Student Council, Chem Club, English Competition Team, Science Bowl, Foreign Language and Culture Club, Library, Moonbuggy, Math Competition Club, Art, Dance Team, Engineering, 4-H, Journalism, Crochet Club, Student Counselors, Programing Club, Community Service-Unicef, Living in Harmony Club, Environmental Workshops, *Confraternidad Universitaria de Avivamiento* (Confra), Chess Club, *Les Thespians Theatre Club*, Music Club, University Gardens Coop, Esperanto Club, UGHS Oratory League

Team, Debate Club, Book Club, Make-up Club, Gastronomy Club, 3D Cooperative, Find a Friend, History Competitions, Yearbook Club, Creative for Kids.

18.    On April 28, 2025, Marcos Meléndez Carrasquillo met with Mrs. Rodríguez, who is the teacher in charge of the clubs at the school and another student because they were both interested in founding the *Students for Life* club at the school.   Teacher Abigail Meléndez Vega served as a witness to the meeting because it was originally contemplated that teacher Abigail Meléndez Vega would serve as moderator of the club.   Mrs. Rodríguez denied the request and rejected the creation of the *Students for Life club*, because it would supposedly be contrary to law because it is a political-religious organization.   However, *Students For Life* is not a political organization, but is religious in nature.   Eventually, teacher Abigail Meléndez Vega informed Marcos Meléndez Carrasquillo that she would not be able to serve as the club's moderator.

19.    Marcos Meléndez Carrasquillo, in the process of forming the *Students for Life* club, did not receive the same treatment as other students in student clubs with external affiliations that exist at University Gardens High School because of the denial and opposition to it by Mr. Rodríguez.   In addition, in the first week of September 2025, during class hours, another teacher addressed the issue of abortion as being a "woman's right," contrary to the rule of law in Puerto Rico and the United States of America.   In the face of the teacher's comments, Marcos Meléndez Carrasquillo felt harassed, uncomfortable, and afraid to address the issue and be judged if he expressed his perspective on that comment.   So, he kept silent.   The teacher's comment exemplifies the unequal treatment of Marcos Meléndez Carrasquillo's religious belief that all human life is worthy of protection, and against the pro-life club through which he would promote that content of speech.

20.    The club fair was scheduled for September 12, 2025.   Marcos Meléndez

Carrasquillo and other students from University Gardens High School tried again to form the *Students For Life* club. To do this, they asked Mrs. Valderrama for help, particularly in the role of moderator of the club. This is because Marcos Meléndez Carrasquillo asked four teachers to serve as moderator, all denying their participation because of their affirmation of abortion, or their commitment to other clubs. Thus, the administration of the school was uncooperative with the establishment of the club. Mrs. Valderrama initially agreed to serve as moderator in the absence of moderators. Marcos Meléndez Carrasquillo was finally able to make the *Students For Life UGHS* club official before teacher Inés Vélez Torres, in charge of the official list of clubs of the University Gardens High School. On September 12, 2025, the club was introduced. The student response to it was positive. In three hours, 47 students between ninth and twelfth grades signed up for the *Students For Life UGHS* club.

21.     On September 16, 2025, days after the club fair, Marcos Meléndez Carrasquillo was ordered to appear at a meeting in the office of Mrs. Valderrama. The order was through two emails sent by the Principal to the Student while he was in calculus class between 9:00 a.m. and 9:15 a.m. Marcos Meléndez Carrasquillo appears at the office, meeting with four teachers (Keishamarí Rodríguez Ramos, Xavier Pagán Orengo, Frank G. Torres Vélez, Abigail Meléndez Vega) and Principal Valderrama. Marcos Meléndez Carrasquillo noticed that teacher Mrs. Rodríguez was upset and angry. Marcos Meléndez Carrasquillo was the only student present, without the company of his parents or other representative. He was seated in a chair in the middle of the four masters. The situation generated pressure and vulnerability for Marcos Meléndez Carrasquillo. The meeting began with Mrs. Valderrama indicating that the *Students For Life UGHS* club would have to be eliminated. Mrs. Rodríguez pointed out as justification that a student at University Gardens High School and several alumni of the school had

complained by email to teachers about the existence of the club. If these emails existed, they were not shown to Marcos Meléndez Carrasquillo. In addition, Marcos Meléndez Carrasquillo was threatened with suspension for lying about the nature of the club. Mrs. Rodríguez insisted that *Students for Life* was a political organization, while the Principal reproached Marcos Meléndez Carrasquillo for supposedly misleading her in relation to the club's purpose. Marcos Meléndez Carrasquillo clarified that he had not lied, explained that *Students for Life of America* is an organization under the benefits of Section 501(c)(3) of the federal Internal Revenue Code, of a religious nature, and distinguished it from *Students for Life Action*, which is political and organized under Section 501(c)(4). Mrs. Rodríguez insisted that both were the same and that affiliation would not be allowed despite the fact that Marcos Meléndez Carrasquillo had presented the documents that indicate the nature of the club that clearly demonstrates that it is based on his Christian Faith.

22.    During the meeting, Mrs. Valderrama demanded to remove her photo from the *Students for Life UGHS's* Instagram account, which she provided to announce the club's board of directors when she agreed to be the moderator. Marcos Meléndez Carrasquillo agreed and deleted the photograph at that very moment. After that, Mrs. Rodríguez warned Marcos Meléndez Carrasquillo that he could not use his phone, the Mrs. Valderrama ordered the verification of the phone, and it was given to teacher Xavier Pagan at their insistence. Marcos Meléndez Carrasquillo agreed to the demands of the teachers and the principal. Marcos Meléndez Carrasquillo was and felt harassed and intimidated by the "adults" in the room.

23.    As a result of the meeting, Marcos Meléndez Carrasquillo was allowed to have a club, but was denied membership in *Students for Life of America* because it was affiliated with an international organization, even though other school clubs are affiliated with entities outside

of Puerto Rico, such as UNICEF, Living in Harmony, and the United Nations club.  The personal consequences of Marcos Meléndez Carrasquillo were a feeling harassed, intimidated, and pressured when he was surrounded by five adults without any support on his side; he experienced confusion, sadness and helplessness because his effort to create a pro-life student space was dismantled; and the situation made it feel or see it as a disciplinary process for having violated some unknown rule, and for being accused of having lied and being warned to be sanctioned with additional discipline.

24.   Marcos Meléndez Carrasquillo was harassed and intimidated before and after the meeting with the principal and the four teachers.  Beginning the first week of September 2025, he received hate messages and threats on the club's Instagram account (formerly *Students for Life UGHS,* now *Students for Life High PR).*  Some of the messages contained expressions such as: "you suck," "fascist," and direct threats such as "KY$" (*Kill yourself*). Which came from former students and other people outside the school.  This situation caused further emotional damage to Marcos Meléndez Carrasquillo, and restricted his rights to freedom of expression, freedom of association and religious freedom.

25.   On September 17, 2025, Mrs. Carrasquillo complained to Mrs. Valderrama about the treatment of Marcos Meléndez Carrasquillo.  In addition, she filed a formal complaint with the Department of Education.  At that meeting, Mrs. Valderrama admitted to Mrs. Carrasquillo that Jorge A. Santiago, the Superintendent of the San Juan Region, ordered her to "take down the group because it was offensive" and because several former students complained via email about the club's existence.  To verify the veracity of her statement, Mrs. Valderrama showed her cell phone that recorded a call from the Superintendent at 6:48 a.m. on September 16, 2025, hours before the meeting.  Mrs. Valderrama also told Mrs. Carrasquillo

that Mr. Santiago ordered a meeting in which he would provide instructions to the teaching personnel in regard to the pro-life club and that she would tell Mrs. Carrasquillo the results of the meeting. On September 18, 2025, Mrs. Carrasquillo filed a complaint with the Puerto Rico Police (2025-1-162-7303), which was referred to the Department of Family Affairs for institutional abuse. Mrs. Carrasquillo was not informed by Mrs. Valderrama of the results of the meeting with Mr. Santiago.

26. On October 16, 2025, Students for Life of America, by and through its General Counsel, wrote to Director Valderrama exhorting her to "immediately recognize" the Students for Life UGHS chapter of Students for Life of America and to cease the intimidation of Marcos Meléndez Carrasquillo. The letter was ignored by Mrs. Valderrama.

27. Given that, from Mrs. Carrasquillo's perspective, the administrative complaint filed in the Department of Education had not moved since it was filed, on November 12, 2025, she followed-up on the complaint in the Department of Education. She was informed that they asked Mrs. Valderrama to contact the Plaintiffs. On November 24, 2025, Mrs. Carrasquillo wrote to Saraí Ruiz Maisonet since there had been no communication. On December 2, 2025, Ms. Ruiz replied by providing the information of the mentor assigned by the Department of Education. Upon obtaining the information, Marcos Meléndez Carrasquillo contacted the mentor, introduced himself and sent her the club's work plan for the semester. The mentor replied quickly after reviewing the plan and agreed to meet on campus next week. On December 10, 2025, mentor Yanira López visited the campus and met with Marcos Meléndez Carrasquillo and Mrs. Valderrama in the office. Mrs. Carrasquillo participated in the meeting by telephone as a speaker. During the meeting, Mrs. Valderrama constantly emphasized to the mentor that the activities could not be carried out because the mentor could not be present all

the time as expected because she was "very busy". Mrs. Valderrama was constantly placing obstacles. She even told Marcos Meléndez Carrasquillo that she warned him that the other groups, out of 20 activities they proposed, only about 3 were approved. However, 100% of the other clubs proposed activities had been approved. They concluded the meeting by agreeing that Marcos Meléndez Carrasquillo would send the club's work plan to the School Council that same day. The School Council met on December 16, 2025. The Council did not approve the *Students for Life UGHS* work plan at that December meeting. When classes began on January 14, 2026, Marcos Meléndez Carrasquillo followed up with the Council and the Director. They replied that they had to wait until January 23, 2026, when they were going to meet that day. By that date, Marcos Meléndez Carrasquillo returned to follow-up urgently since some proposed activities had been lost because the proposed dates had passed. Thus, the lack of cooperation and creation of obstacles continued.

28. In the face of the continued attacks, harassment and/or intimidation of Marcos Meléndez Carrasquillo, and the inaction of the Department of Education, on January 29, 2026, Mrs. Carrasquillo wrote an email to Ms. Ruiz in which she recounts the lack of action of Mrs. Valderrama and the School Council. Ms. Ruiz answered the email and requested an opportunity to contact the San Juan Regional Office.

29. On January 29, 2026, Mrs. Rodríguez told Marcos Meléndez Carrasquillo that "[a]ll fraternization and community activities will be approved to be carried out as long as they do not affect the school schedule of our school," clarifying that "they must be carried out after 4:10 pm." In addition, she demanded that the moderator be present at all activities. In the event that the moderator is not available, "they will not be able to meet." The proposed talks on the personhood of the unborn and the scientific beginning of life "should be held after school

hours... after 4:10 pm, and with the presence of the moderator of the school organization." She denied "collaboration with the [*Students for Life of America*] ... until the objectives of such collaboration are specified ... and submit to the Council a proposal specifically for this activity with date, time and resources that will participate." In addition, she conditioned "all community activities or visits to spaces outside the school during school hours" upon request and approval from the regional superintendent. The foregoing conditions effectively made the club inoperative, and were conditions not placed on other clubs. Other clubs regularly meet during school hours or before 4:10 p.m., on campus, and without their mentor. In addition, many of the clubs were approved for excursions and field trips during school hours.

30. On February 26, 2026, during the period corresponding to the Spanish class, teacher Deborah Serrano Carrasquillo assigned the class a creative work that consisted of writing a story on the subject of marginalized persons. Once the assignment was explained, Marcos Meléndez Carrasquillo initially proposed developing a story about persecuted Christians, understanding that it could be a marginalized group within certain social contexts and that this approach was within the assigned theme. This proposal was not allowed by the teacher. After the denial, Marcos Meléndez Carrasquillo expressed his intention to make a story about aborted babies, understanding that this topic was also related to the purpose of the work and also reflected his personal convictions. When he expressed his intention to develop the story with this second approach, the teacher indicated that this topic was not allowed either. The teacher told Marcos Meléndez Carrasquillo that this topic was about religion, that it was not allowed in her classroom, and that he was wrong or that he did not know what he was talking about. In addition to denying those topics, the teacher made political expressions related to abortion and made comments against the pro-life movement, knowing the beliefs of

Marcos Meléndez Carrasquillo. The expressions and the refusal to allow him to carry out the work with the proposed topics made him feel uncomfortable, self-conscious and discriminated against within the academic context.

31. Given the inactivity of the complaint before the Department of Education, on March 25, 2026, Mrs. Carrasquillo went to the Department of Education in order to know the status of the complaint. She was informed that the complaint is in "Orientation", that the matter did not have an identification number and that in order to know about its status it was necessary to contact Mrs. Ginés Aldarondo. As of the date of this lawsuit, the complaint before the Department of Education has not produced an adequate remedy; the *Students for Life club* has been rendered inoperative due to obstruction by the Department of Education and its employees; and the Defendants have discriminated against Marcos Meléndez Carrasquillo for his religious convictions, the content of his speech and his association with Students for Life of America. Mr. Ramos was made specifically aware of the foregoing and did nothing, even expressing that Marcos Meléndez Carrasquillo had not suffered any harm or damage. Mr. Ramos showed callous indifference to the repeated violations of constitutional and legal rights of Marcos Meléndez Carrasquillo.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

32. All Defendants have violated fundamental constitutional rights available to Plaintiffs, for which Plaintiffs request injunctive relief to stop such violations.

33. All Defendants are jointly and severally liable to Plaintiffs for their intentional or negligent acts and omissions, and/or their wantonly illegal and in reckless and gross disregard which are averred against them and for the damages caused to Plaintiffs based on those discriminatory acts and omissions. For these causes of action, Plaintiffs seek trial before a jury.

34.   Plaintiffs incorporate the foregoing allegations to the following causes of action and claims for relief as if fully transcribed in each.

## COUNT TWO
## 20 U.S.C. §4071
## DENIAL OF EQUAL ACCESS

34.   The Equal Access Act (EAA) provides that "[i]t shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings."  20 U.S.C. Sec. 4071(a).  "A public secondary school has a limited open forum whenever such school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time."  20 U.S.C. Sec. 4071(b).

33.   The Department of Education receives Federal financial assistance which directly benefits University Gardens High School.  University Gardens High School offers and in fact provides the opportunity for one or more noncurriculum-related student groups.  Defendants have acted unlawfully denying equal access and a fair opportunity to Marcos Meléndez Carrasquillo and the Students for Life University Gardens pro-life club, and have violated and continue to violate the Equal Access Act due to their individual and collective discrimination against Marcos Meléndez Carrasquillo, his religious and moral point of view about human life and the denial of the establishment of Students for Life University Gardens High School, based on the content of his and the pro-life club's expression and association.

34.   Plaintiffs seek preliminary and permanent injunctive relief against Defendants from the continuing violation of Marcos Meléndez Carrasquillo's rights under the EAA, and an

order of the Court permitting the immediate establishment, operation, and access to all facilities in the same fashion as other noncurricular clubs and associations to school facilities, benefits and privileges.

## COUNT TWO
## 42 U.S.C. §1983
## FIRST AMENDMENT TO THE U.S. CONSTITUTION

35.     The First Amendment of the Constitution of the United States of America prohibits Congress from making "law[s] respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."   The First Amendment is made extensive to the states and territories of the United States of America by the Fourteenth Amendment.

36.     Defendants have purposefully and intentionally treated Marcos Meléndez Carrasquillo differently than it treated the other students who have developed clubs, the other clubs and other club activities in the facilities of the University Gardens High School, and particularly so because of his religious and moral beliefs, and because of the content of his pro-life speech.

37.     If Defendants had not treated Marcos Meléndez Carrasquillo differently, Marcos Meléndez Carrasquillo would have developed the pro-life club, enjoyed his religious freedom and his moral convictions, and would have enjoyed his rights to free speech, and association.  He would also have enjoyed an education based on fundamental rights, all of which were deprived to him without due process and absent equal protection of his individual constitutional rights.

38.     By the conduct alleged, Defendants, acting under color of Puerto Rico law, deprived Marcos Meléndez Carrasquillo of his rights to freedom of speech, freedom of

association, freedom of religion, his due process rights and the equal protection of the laws in violation of the Constitution of the United States of America.

## COUNT THREE
## 42 U.S.C. §1983
## PROCEDURAL AND SUBSTANTIVE DUE PROCESS

39.     Defendants have purposefully and intentionally treated Marcos Meléndez Carrasquillo differently than it treated the other students who have developed clubs, the other clubs and other club activities in the facilities of the University Gardens High School, and particularly so because of his religious and moral beliefs, and because of the content of his pro-life speech, and the reason for his association.

40.     By the conduct alleged herein, the Defendants, acting under color of Puerto Rico law, deprived Marcos Meléndez Carrasquillo of due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.

41.     As a direct result of Defendants' actions, Marcos Meléndez has been deprived of his rights to freedom of speech, freedom of association, freedom of religion, his due process rights and the equal protection of the laws in violation of the Constitution of the United States of America.

## COUNT FOUR
## 42 U.S.C. §1983
## EQUAL PROTECTION CLAUSE

43.     Defendants have purposefully and intentionally treated Marcos Meléndez Carrasquillo differently than it treated the other students who have developed clubs, the other clubs and other club activities in the facilities of the University Gardens High School, and particularly so because of his religious and moral beliefs, and because of the content of his pro-life speech, and the reason for his association.

44.     If Defendants had not treated Marcos Meléndez Carrasquillo differently, Marcos Meléndez Carrasquillo would have formalized the Students for Life UGHS, promoted and participated in its activities, its speech and its beliefs.

45.     By the conduct alleged, Defendants, acting under color of Puerto Rico law, deprived Marcos Meléndez Carrasquillo of the equal protection of the laws in violation of the Fourteenth Amendment to the U.S. Constitution.

46.     As a direct result of Defendants' actions, Marcos Meléndez has been deprived of his religious freedom, his freedom of speech and expression, his freedom of association and other rights and privileges enjoyed by others in University Gardens High School.

## COUNT FIVE
## VIOLATION OF SECTION 7(A) OF THE FUNDAMENTAL RIGHT TO RELIGIOUS FREEDOM ACT OF PUERTO RICO

47.     Defendants have purposefully and intentionally treated Marcos Meléndez Carrasquillo differently than it treated the other students who have developed clubs, the other clubs and other club activities in the facilities of the University Gardens High School, and particularly so because of his religious and moral beliefs, and because of the content of his pro-life speech.   Defendants have submitted Marcos Meléndez Carrasquillo to a pattern of harassment and intimidation and have denied him the opportunity to express his beliefs in school work on the basis of the content of his beliefs and speech.

48.     If Defendants had not treated Marcos Meléndez Carrasquillo differently, Marcos Meléndez Carrasquillo would have developed the pro-life club, enjoyed his fundamental religious freedom, religious expression of his moral convictions, and would have enjoyed his rights to his religious freedom by expressing them in his pro-life club, and school work both written and oral.

49. By the conduct alleged, Defendants, acting under color of Puerto Rico law, deprived Marcos Meléndez Carrasquillo of his fundamental legal right to freedom of religion religious expression and his moral convictions in violation of Section 7(A) of the Puerto Rico Fundamental Right to Religious Freedom Act.

## COUNT SIX
## PUERTO RICO CONSTITUTION,
## ARTICLE II, SECTIONS 1, 3, 4, 5, 6 AND 7

### FREEDOM OF RELIGION, FREEDOM OF SPEECH, FREEDOM OF ASSOCIATION, RIGHT TO AN EDUCATION BASED ON FUNDAMENTAL RIGHTS, DUE PROCESS AND EQUAL PROTECTION

50. Defendants have purposefully and intentionally treated Marcos Meléndez Carrasquillo differently than it treated the other students who have developed clubs, the other clubs and other club activities in the facilities of the University Gardens High School, and particularly so because of his religious and moral beliefs, and because of the content of his pro-life speech.

51. If Defendants had not treated Marcos Meléndez Carrasquillo differently, Marcos Meléndez Carrasquillo would have developed the pro-life club, enjoyed his religious freedom and his moral convictions, and would have enjoyed his rights to free speech, and association. He would also have enjoyed an education based on fundamental rights, all of which were deprived to him without due process and absent equal protection of his individual constitutional rights.

52. By the conduct alleged, Defendants, acting under color of Puerto Rico law, deprived Marcos Meléndez Carrasquillo of his rights to freedom of speech, freedom of association, freedom of religion, his due process rights and the equal protection of the laws in violation of Section 1, 3, 4, 5, 6, and 7 of the Puerto Rico Constitution.

## COUNT SEVEN

## DECLARATORY JUDGMENT

53.    Defendants have willfully, illegally and grossly disregarded the controlling legal and regulatory provisions, purposefully and intentionally treated Marcos Meléndez Carrasquillo differently than it treated the other students who have developed clubs, the other clubs and other club activities in the facilities of the University Gardens High School, and particularly so because of his religious and moral beliefs, and because of the content of his pro-life speech.

54.    If Defendants had not treated Marcos Meléndez Carrasquillo differently, Marcos Meléndez Carrasquillo would have developed the pro-life club, enjoyed his religious freedom and his moral convictions, and would have enjoyed his rights to free speech, and association.  He would also have enjoyed an education based on fundamental rights, all of which were deprived to him without due process and absent equal protection of his individual constitutional rights.

55.    By the conduct alleged, Defendants, harassing, intimidating,  abusing the law, acting with reckless disregard of the rights and privileges of Marcos Meléndez Carrasquillo, and illegally exercising their authority, deprived Marcos Meléndez Carrasquillo of his rights to freedom of speech, freedom of association, freedom of religion, his due process rights and the equal protection of the laws in violation of Equal Access Act, the Constitution of the United States of America, the Puerto Rico Constitution and the Fundamental Right to Religious Freedom Act of Puerto Rico.

56.    A declaration from this Court that Defendants individual and collective  actions are abusive and in violation of Equal Access Act, the Constitution of the United States of America, the Puerto Rico Constitution and the Fundamental Right to Religious Freedom Act of Puerto Rico will terminate the controversy.

## DAMAGES

57.     As the result of the events herein described, Plaintiffs are entitled to **compensatory damages** against Defendants individually and collectively in an amount not less than five hundred thousand dollars ($500,000.00).

58.     As the result of the events herein described, Plaintiffs in the instant case is entitled to **punitive damages** against Defendants individually and collectively in an amount not less than five hundred thousand dollars ($500,000.00).

59.     Plaintiff's request a trial by jury as granted by applicable statues.

**WHEREFORE**, Plaintiffs prays for judgment against Defendants and each of them as follows:

(a)     ORDER the Defendants to cease and desist from further violations of Plaintiffs' constitutional and legal rights;

(b)     ORDER the Defendants to permit the establishment of the Students for Life UGHS chapter of Students for Life of America with the same access to facilities, benefits and privileges that other noncurricular clubs enjoy;

(c)     ENJOIN the Defendants from interfering with Plaintiffs' rights to religious freedom, freedom of speech and freedom of association secured by the Constitution of the United States and the Constitution of Puerto Rico;

(d)      DECLARE that the Defendants have violated and deprived Plaintiffs' freedom of religion, freedom of speech, freedom of association, due process rights under the Constitution of the United States under color of law;

(e)     DECLARE that the Defendants violated the Constitution and the laws of the Commonwealth of Puerto Rico under color of law:

(d)     ORDER the Defendants to pay compensation to Plaintiffs in the amount of not less than one million dollars ($1,000,000.00) for violation of their constitutional rights and other damages;

(e)     ORDER Defendants to pay Plaintiffs all reasonable attorneys' fees, expenses and costs incurred by reason of this litigation; and

(f)     Grant such additional relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 23rd day of April 2026.

**THE LAW OFFICES OF EDWARD W. HILL**
273 Sierra Morena PMB 248
San Juan, PR 00926
Tel. (787) 294-0033/0044

By:   s/ Edward W. Hill
        Edward W. Hill
        USDC-PR No. 213614